UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUINZETTA RUCKER,

        Plaintiff,        Civil Action No. 18-12439
                                      Honorable Judith E. Levy
v.                                        Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 16]**

Plaintiff Quinzetta Rucker ("Rucker") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #15, #16), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Rucker is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the

Commissioner's Motion for Summary Judgment (**Doc. #16**) be **GRANTED**, Rucker's Motion for Summary Judgment (**Doc. #15**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Rucker was 39 years old at the time of her alleged onset date of January 5, 2015, and at 5'3" tall weighed approximately 250 pounds during the relevant time period. (Tr. 43, 200, 228). She completed high school and two years of college. (Tr. 43-44, 201). She worked as a home health care provider until approximately January of 2015, when her medical conditions allegedly made it too difficult for her to perform her job duties. (Tr. 32, 42, 189, 200-01). She now alleges disability primarily as a result of lung disease, pancreatitis, back and knee pain, and carpal tunnel syndrome. (Tr. 34, 36-40, 200).

After Rucker's applications for DIB and SSI were denied at the initial level on October 26, 2015 (Tr. 94-98, 111-15), she timely requested an administrative hearing, which was held on February 13, 2017, before ALJ Patricia McKay (Tr. 27-68). Rucker, who was represented by attorney Lloyd Pont, testified at the hearing, as did vocational expert Michael Rosko. (*Id.*). On May 2, 2017, the ALJ issued a written decision finding that Rucker is not disabled under the Act. (Tr. 10-21). On June 5, 2018, the Appeals Council denied review. (Tr. 1-5). Rucker timely filed for

judicial review of the final decision on August 7, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Rucker's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at

3

> least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Rucker is not disabled under the Act. At Step One, the ALJ found that Rucker has not engaged in substantial gainful activity since January 5, 2015 (the alleged onset date). (Tr. 12). At Step Two, the ALJ found that she has the severe impairments of history of sarcoidosis of the lungs and eyes with iridocyclitis, history of rheumatoid arthritis, history of bilateral carpal tunnel syndrome, chronic pancreatitis, asthma, degenerative joint disease of the knees bilaterally, morbid obesity, obstructive sleep apnea, gastroesophageal reflux disorder, and irritable bowel syndrome. (Tr. 12-13).

At Step Three, the ALJ found that Rucker's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 13).

The ALJ then assessed Rucker's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations: occasional climbing of stairs, crouching, crawling, kneeling, stooping, or bending; must avoid workplace hazards such as dangerous, moving machinery and unprotected heights, such that she is not able to climb ladders, ropes, or scaffolding; must avoid continuous exposure to pulmonary irritants, necessitating a clean air work environment; frequent grasping/gross manipulation with the bilateral upper extremities; frequent fingering/fine manipulation with the bilateral upper extremities; and no use of power tools or vibrating tools. (*Id.*).

At Step Four, the ALJ found that Rucker is not capable of performing any of her past relevant work. (Tr. 19). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Rucker is capable of performing the jobs of security monitor (12,500 jobs nationally), document scanner (5,000 jobs), assembler (30,000 jobs), and visual inspector (10,000 jobs). (Tr. 20). As a result, the ALJ concluded that Rucker is not disabled under the Act. (Tr. 21).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v.*

6

*Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D. Analysis**

In her motion for summary judgment, Rucker argues that the ALJ "gave short shrift" to several of her physical impairments, including a tremor in her non-dominant hand, pancreatitis, and irritable bowel syndrome ("IBS").[1] (Doc. #15 at 16-22). For the reasons set forth below, the Court disagrees and finds that substantial evidence supports the ALJ's decision.

*1. The ALJ Properly Evaluated the Tremor in Rucker's Left Hand*

Rucker first argues that the ALJ's RFC finding fails to account for the non-severe[2] tremor in her left hand. (*Id.* at 16-18). As set forth below, however, the ALJ thoroughly discussed the evidence regarding this condition and reasonably found

---

[1] Because Rucker challenges the ALJ's evaluation of these three impairments, the Court will focus its discussion on medical and other evidence pertaining to these conditions.

[2] Rucker does not challenge the ALJ's finding that her left-hand tremor was not severe and, thus, any such argument is waived. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (undeveloped claims are waived).

7

that greater limitations were not warranted.

In discussing Rucker's left hand tremor, the ALJ noted that a March 12, 2015 EMG showed "minimal left median mononeuropathy at the wrist (carpal tunnel syndrome)." (Tr. 16, 384). The ALJ also noted that the exam "revealed an incidental finding of superimposed intermittent tremor in some of the muscles[.]" (*Id.*). As a result, Rucker saw Shana Krstevska, M.D., a neurologist, on March 19, 2015, for evaluation of this tremor. (Tr. 385-88). Rucker reported that it had begun about a year and a half earlier, when she became very anxious during a TB test, but she had not heeded a recommendation that she see a neurologist at that time; rather, she first sought treatment on the March 19, 2015 date. (Tr. 385). As the ALJ noted, Rucker reported that, at baseline, she had a mild tremor in her left hand, which was exacerbated when she felt stressed (approximately two to three times per week). (Tr. 16, 385).

As the ALJ pointed out, however, on objective motor examination, Rucker had full strength in all four extremities, with the exception of "trace interosseous weakness on the left." (Tr. 16, 388). There was no wasting or spasticity. (*Id.*). Dr. Krstevska further observed that Rucker's left hand had a tremor with "mild amplitude" that was "worse with sustention and finger nose testing," and she was "unable to write with her left hand." (Tr. 388). But, she had "mild to no difficulty" transferring water between cups; there was no "resting component of the tremor";

8

and "[r]epetitive tapping was normal, with no decrementing response." (*Id.*).

The ALJ also considered Dr. Krstevska's records from a follow-up appointment on October 15, 2015, which showed the same objective examination findings.[3] (Tr. 16 (citing Tr. 393)). Moreover, Dr. Krstevska noted that an April 2015 EEG ordered to evaluate for epileptiform activity in relation to the tremor was "normal." (Tr. 389-90 (also noting that a March 2015 MRI of the brain "was unremarkable")). Ultimately, Dr. Krstevska opined that Rucker's tremor was most likely caused by her prednisone medication, and because it was mild and intermittent, there was no need to control it with medication. (Tr. 16, 385 ("there is a very mild action tremor seen without any evidence of parkinsonian features … we do not feel that Ms. Rucker would benefit from daily medication …."), 394 (describing tremor as "[m]ild intermittent and no need for medications")).

The ALJ also pointed out that these objective findings and Dr. Krstevska's impression were consistent with Rucker's September 2015 consultative examination with Dr. Montasir. (Tr. 16-17, 374, 378-80). Specifically, Dr. Montasir observed on examination that Rucker had intact fine and gross dexterity and good handgrip

---

[3] Rucker argues that, in summarizing Dr. Krstevska's treatment notes from the March and October 2015 visits, the ALJ improperly discussed them as if they were only from a single appointment. (Doc. #15 at 16-17). But, the ALJ expressly cited to treatment records from both appointments, demonstrating that she considered both visits. (Tr. 16). Moreover, Dr. Krstevska's objective motor examination findings were identical at both visits (Tr. 388, 393), as was her opinion that because the left hand tremor was mild and sporadic, it did not need to be controlled with medication (Tr. 385, Tr. 394). Thus, Rucker has failed to show any error in the ALJ's evaluation of these medical records.

9

bilaterally. (Tr. 17, 374). Dr. Montasir then opined that Rucker has no limitations in pushing, pulling, or gross manipulation, and only an unspecified degree of reduced fine dexterous manipulation. (Tr. 374). Consistent with this opinion, the ALJ limited Rucker to frequent "grasping/gross manipulation" and "feeling/fine manipulation" with the bilateral upper extremities. (Tr. 13).

In arguing that the ALJ failed to adequately account for her left hand tremor, Rucker claims that the ALJ "erroneously recounted" findings during the October 2015 examination, failing to appreciate Dr. Krstevska's observation that "she *did* have a left hand tremor that left her unable to write at all[.]" (Doc. #15 at 17 (emphasis in original) (citing Tr. 393)). But, a fair reading of Dr. Krstevska's notes reveals that Rucker is mistaken, as Dr. Krstevska said:

> A tremor is present in the left hand that is mild amplitude and worse with sustention and finger nose testing. A handwriting sample was obtained and there is no tremor evident in the right hand with drawing of the Archimede's spiral and signing the patient's name. The patient is unable to write with her left hand.

(Tr. 393). Considering this note in its entirety, then, as well as the fact that Rucker is right-handed, it is not at all clear from Dr. Krstevska's phrasing that she even tested Rucker's ability to write with her left hand. Thus, Rucker has not shown that the ALJ's characterization of the handwriting sampling is erroneous. Moreover, even if the ALJ misinterpreted this note, any such error is harmless where, as set forth above, the ALJ's RFC finding is supported by Dr. Montasir's opinion as to

Rucker's functional abilities, by Dr. Krstevska's opinion that the tremor was intermittent and did not need to be treated with medication, and by multiple objective examination findings showing nearly full strength in the left extremity, good handgrip, and intact fine and gross dexterity.[4] (Tr. 16-17, 378-80, 385-88, 393-94). *See, e.g., Cutlip*, 25 F.3d at 286 ("If the [ALJ's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion[.]") (internal citations omitted).

2.  *The ALJ Properly Evaluated Rucker's IBS*

Rucker next argues that the ALJ erred in failing to include limitations in the RFC to account for her IBS. (Doc. #15 at 18-21). Specifically, Rucker argues that the ALJ erred in discounting the restrictions imposed by her treating physician, Roja Ramisetty, M.D.[5] (*Id.* (citing Tr. 594)).

The well-established treating physician rule "mandate[s] that the ALJ 'will'

---

[4] Rucker also claims that the ALJ ignored her testimony that she has tremors "two or three times a week" and that, when they occur, she has "no alternative but to wait them out before she could use the hand in question[.]" (Doc. #15 at 18 (citing Tr. 38-39)). But, the ALJ reasonably declined to fully credit Rucker's subjective allegations in this respect, finding that they conflicted with the other significant evidence of record set forth above (namely, the opinions of Dr. Montasir and Dr. Krstevska, the fact that she did not have tremors in her dominant right hand, and the fact that she retained good strength, handgrip, and dexterity in her left hand, despite the tremor). (Tr. 16-17). In light of this evidence, Rucker's citation to her own subjective complaints fails to demonstrate any error in the ALJ's evaluation of her tremor.

[5] Dr. Ramisetty treated Rucker for both IBS and pancreatitis. Rucker's pancreatitis is discussed in greater detail, *infra* at 15-16.

give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)[6]). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

    Here, in evaluating Dr. Ramisetty's opinion, the ALJ reasoned:

> The majority of the form … is not completed, with the physical limitation sections of the form left blank. It was noted that claimant needs a job that permits ready access to a restroom, but sections of the form indicating the need for unscheduled breaks and their frequency and duration was not completed.

(Tr. 18). Thus, the ALJ gave Dr. Ramisetty's opinion little weight "because it is not completed and more importantly because it is not supported by the treatment records …." (*Id.*). Later in the decision, the ALJ noted, "[s]ince the hospitalization records and other evidence of record do not reveal [Rucker's] diarrhea to be of such a

---

[6] Although this regulation has been superseded by 20 C.F.R. § 404.1520c, the new regulation applies only to claims filed on or after March 27, 2017.

12

frequency as to require unscheduled restroom breaks, no related limitation has been included in the [RFC] ...."  (Tr. 19).

The reasons articulated by the ALJ for discounting Dr. Ramisetty's opinion, and not including a specific restroom break limitation in the RFC, find support in the record.  To begin with, the ALJ correctly noted that Dr. Ramisetty did not complete the majority of the form.  (Tr. 18, 591-94).  For example, although Dr. Ramisetty checked a box opining that Rucker requires ready access to a restroom, the sections of the form addressing the need for "unscheduled restroom breaks" and their frequency was left blank.[7]  (Tr. 18, 593).  It was entirely reasonable for the ALJ to discount Dr. Ramisetty's opinion for this reason alone, as it simply did not provide an opinion as to the very limitations that Rucker now claims should have been included in the RFC.

Rucker also challenges the ALJ's decision to discount Dr. Ramisetty's opinion because it was not consistent with the bulk of the treatment records, arguing that "Dr. Ramisetty reported diarrhea on numerous occasions … [and] was the physician who diagnosed IBS …."  (Doc. #15 at 20).  But this argument ignores the fact that the ALJ did acknowledge that Dr. Ramisetty diagnosed Rucker with IBS and chronic diarrhea based on her subjective reports of symptoms.  (Tr. 18, 573-85).

---

[7] Indeed, despite the fact that the form completed by Dr. Ramisetty was titled "Irritable Bowel Syndrome Medical Source Statement," suggesting the direct applicability of most of the questions therein, large sections of this form were left blank.  (Tr. 591-94).

The ALJ simply noted that Dr. Ramisetty's records do not provide information as to the frequency of the diarrhea (indicating on only one occasion that the diarrhea was "intermittent"). (Tr. 18, 571). Indeed, Dr. Ramisetty left blank the section of the form asking her to "[i]dentify the clinical findings and objective signs" that support the restrictions she was imposing. (Tr. 591)[8]. She also failed to answer whether she believed Rucker's condition would be expected to last at least twelve months. (Tr. 592). And, Dr. Ramisetty noted that Rucker's prognosis was "good." (Tr. 591). Accordingly, the ALJ gave sound reasons supported by the record for discounting Dr. Ramisetty's opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion … the more weight we will give that medical opinion."); *see also Hannah v. Comm'r of Soc. Sec.*, No. 16-11589, 2017 WL 4946578, at *10 (E.D. Mich. Aug. 15, 2017) (ALJ properly discounted treating physician opinions where they "were not supported by the providers' own treatment notes and were otherwise inconsistent with other substantial evidence in the record").

Ultimately, Rucker's citation to a few instances in which she complained of diarrhea in 2016 simply amounts to an improper invitation for this Court to reweigh the evidence, particularly where she concedes that "records from 2014 and 2015 did

---

[8] Similarly, Dr. Ramisetty failed to answer a question that asked her whether Rucker's impairments "as demonstrated by signs, clinical findings and laboratory or test results ***reasonably consistent*** with the [] functional limitations [imposed] in this evaluation?" (Tr. 594 (emphasis in original)).

14

not reflect diarrhea" (Doc. #15 at 20). *See Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the [Commissioner]."). Here, where the ALJ reasonably declined to include a limitation in Rucker's RFC pertaining to bathroom breaks, the Court finds no error warranting remand.

### 3. The ALJ Properly Evaluated Rucker's Pancreatitis

Lastly, Rucker points out that she was hospitalized on four occasions, between December 2014 and June 2016, for bouts of acute pancreatitis. (Doc. #15 at 22). She then argues, almost in passing, that "the ALJ failed to address how this situation would [] have impacted upon [her] ability to maintain competitive employability …." (*Id.*).

This argument misses the mark, as the ALJ specifically discussed Rucker's hospitalizations for pancreatitis – noting that she was treated with IV fluids and pain medication – but reasonably determined that this condition was not disabling. (Tr. 18-19). Specifically, the ALJ referenced Rucker's hospital admission for pancreatitis in December 2014, as well as her return to the emergency room with similar complaints in June 2015. (Tr. 18, 326, 328-29, 333-37). But, at her September 2015 consultative examination, Rucker reported that her history of chronic pancreatitis was tied to a history of alcohol abuse; said that she no longer drank alcohol; and indicated that, apparently as a result, this condition was

improving. (Tr. 372-75). The ALJ also pointed out that when Rucker began treating with Dr. Ramisetty in October 2015, she found that the pancreatitis was likely secondary to azathioprine, a medication that Rucker was no longer taking. (Tr. 18, 588-89). Dr. Ramisetty prescribed Creon and, within a few months, had removed the diagnosis of pancreatitis. (Tr. 585, 589). The ALJ also noted that while Rucker subsequently had another hospital admission for pancreatitis in March 2016, she acknowledged "binge drinking to celebrate a friend's birthday" the week before. (Tr. 18-19).

After considering all of this evidence, the ALJ reasonably found that Rucker's pancreatitis did not require additional limitations, where it could be successfully treated, including through the removal of azathioprine, abstaining from alcohol, and taking Creon as prescribed.[9]  *See, e.g., Bryce v. Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL 1328277, at *5 (E.D. Mich. Mar. 28, 2014) (impairments that are controlled by medication are not disabling)  In summary, the record simply does not support Rucker's claim that she would have missed "more than two days a month from work" on an ongoing basis due to her pancreatitis (Doc. #15 at 22), and instead amply supports the ALJ's finding that this condition was not disabling.

For all of the above reasons, and upon an independent review of the entire

---

[9] Rucker's own hearing testimony is consistent with the ALJ's analysis. Specifically, she testified that she had quit drinking entirely almost six months earlier and her pancreatitis had cleared up, although she still took Creon because of issues with her enzymes. (Tr. 50).

16

record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #16**) be **GRANTED**, Rucker's Motion for Summary Judgment (**Doc. #15**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: March 22, 2019  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of*

17

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 22, 2019.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager